870 So.2d 888 (2004)
ENIC, PLC, Appellant,
v.
F.F. SOUTH & COMPANY, INC., et al, Appellee.
No. 5D03-439.
District Court of Appeal of Florida, Fifth District.
March 19, 2004.
Rehearing Denied April 23, 2004.
*889 David B. King, Mayanne Downs and Kristen L. Davenport of King, Blackwell & Downs, P.A., Orlando, for Appellant.
David H. Simmons, Julie Hions O'Kane and Daniel J. O'Malley of de Beaubien, Knight, Simmons, Mantzaris & Neal, LLP, Orlando, for Appellee.
PETERSON, J.
Enic, PLC, a United Kingdom public limited company, and the parent company of its wholly-owned subsidiary, Enic Entertainment, Inc., ("Enic Entertainment"), appeals a non-final order denying its motion to dismiss for lack of personal jurisdiction.
Enic Entertainment was the parent corporation of its wholly-owned subsidiary, Church Street Station of Orlando, Inc., ("Church Street Station"). On May 4, 2001, Enic Entertainment sold all of its stock in Church Street Station to F.F. Station, LLC, ("F.F.Station"). On September 27, 2001, F.F. South & Company, Inc., ("F.F.South"), F.F. Station, and Church Street Station of Orlando, Inc., ("CSS"), (collectively "Plaintiffs"), sued Enic Entertainment, Enic, PLC, Gerard O'Riordan, director of Enic Entertainment and former director of Church Street Station, Tyler Piercy, chief financial officer of Enic Entertainment, and Arthur Anderson, LLP, ("Arthur Anderson"), (collectively "Defendants"). In their complaint, the Plaintiffs alleged inter alia that the Defendants: 1) knowingly misrepresented the value, income, and indebtedness of Church Street Station; 2) knowingly misrepresented the arrangements with, and rents due, from tenants of the various properties in the Church Street Station entertainment, dining and shopping complex located in Orlando, Florida; and 3) removed valuable property from the complex which was to remain as part of the purchase.
Enic, PLC responded with a motion to dismiss for lack of personal jurisdiction alleging that it does not have the necessary minimum contacts with the State of Florida to avoid offending traditional notions of fair play and substantial justice as required by International Shoe v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), and its progeny. It supported its motion with the affidavit of its finance director and depositions.
The trial court denied the motion to dismiss and found that Enic, PLC as the parent, exuded sufficient control over its subsidiary, Enic Entertainment. In support of its finding, the trial court listed those acts which it relied on in making its finding, including inter alia: Enic, PLC's ownership of Enic Entertainment; some of Enic, PLC's directors also served on Enic Entertainment's board of directors; Enic, PLC's control over disposal and acquisition of assets by Enic Entertainment; Enic, PLC's financial support of Enic Entertainment; Enic Entertainment's reporting of day-to-day operation of Church Street Station to Enic, PLC; Enic, PLC's review of the proposed contract for sale of Church Street Station; and Enic, PLC's reimbursement of Church Street Station's accounting bills.
Orders finding personal jurisdiction are issues of law reviewable under the de novo standard of review. E.g., Execu-Tech Business Systems, Inc. v. New Oji Paper Co. Ltd., 752 So.2d 582, 584 (Fla.), cert. denied 531 U.S. 818, 121 S.Ct. 58, 148 L.Ed.2d 25 (2000). To establish personal jurisdiction over Enic, PLC, the foreign defendant, the Plaintiffs must satisfy a two-pronged test. Procedural in nature, the first prong requires the plaintiff to initially plead sufficient factual allegations to subject the defendant to jurisdiction under section 48.193(1), Florida Statutes *890 (2002), Florida's Long Arm Statute.[1]See, e.g., John Scott, Inc. v. Munford, Inc., 670 F.Supp. 344 (S.D.Fla.1987). The second prong is concerned with due process and requires the plaintiff to establish that the defendant has sufficient minimum contacts with the state to meet the federal requirements of fair play and substantial justice under International Shoe and World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). The contacts must be "such that he should reasonably anticipate being haled into court there." World-Wide, 444 U.S. at 297, 100 S.Ct. 559. See also Venetian Salami Co. v. J.S. Parthenais, 554 So.2d 499 (Fla.1989) (holding that the requisite minimum contacts are not built into the long-arm statute). If a defendant meets the high threshold of "substantial and not isolated activity within the state" as required under section 48.193(2), minimum contact is also met. Woods v. Nova Companies Belize, Ltd., 739 So.2d 617, 620 (Fla. 4th DCA 1999).

PRONG I: FLORIDA'S LONG ARM PERSONAL JURISDICTION
In order to support long arm personal jurisdiction under section 48.193, Florida Statutes, (2002), the Plaintiffs "must first allege sufficient facts in the complaint in support of long arm jurisdiction." John Scott, 670 F.Supp. at 345. Once the Plaintiffs do this, Enic, PLC must file affidavits or other sworn testimony to substantiate its claim that Florida's long arm statute is inapplicable to it. Id. The burden then shifts back to the Plaintiffs to prove a basis for personal jurisdiction. Venetian, 554 So.2d at 502-503. The Plaintiffs allege in the instant case that personal jurisdiction exists under section 48.193(1)(a), (b) and (g), Florida Statutes. Both sides filed affidavits and depositions in support of their positions and the trial court found that the Plaintiffs alleged sufficient facts in its complaint and that Enic, PLC satisfied its burden under the Venetian test, stating that, "Plaintiffs['] initial pleading which alleges that Mr. O'Riordan and Mr. Piercy were Florida agents and representatives of Enic, PLC, sufficiently alleged facts to bring Enic, PLC within the [c]ourt's jurisdiction."

PRONG II: MINIMUM CONTACTS/AGENCY
Our analysis now turns to the second prong, "minimum contacts," and in this case concerns the question whether an agency relationship existed between Enic, PLC and Enic Entertainment such that personal jurisdiction can be established over Enic, PLC.
Personal jurisdiction exists when any person, who personally or through an agent, either carries on a business in Florida or breaches a contract by failing to perform acts required to be performed in Florida. § 48.193(1)(a), (g), Fla. Stat. (2002); John Scott, 670 F.Supp. at 345. As in John Scott, the issue of personal *891 jurisdiction is largely controlled by whether Enic Entertainment can be regarded as Enic, PLC's agent. Id. If Enic Entertainment acted as Enic, PLC's agent, then the trial court did not err in its ruling.
Determination of the existence of an agency is an issue of fact and the burden is on the plaintiff to establish a prima facie case. Product Promotions Inc. v. Cousteau, 495 F.2d 483, 492 (5th Cir.Tex.1974). Under Florida law, the elements of an agency relationship are: 1) acknowledgment by the principal that the agent will act for it; 2) the agent's acceptance of the undertaking; and 3) control by the principal over the action of the agent. Goldschmidt v. Holman, 571 So.2d 422, 424 n. 5 (Fla.1990). We need only focus on the third element to determine the outcome of this case: whether Enic, PLC exercised that degree of control over Enic Entertainment to make the latter the agent of the former.
It is well settled in Florida that the mere presence of a subsidiary in Florida, without more, does not subject a non-Florida corporate parent to long-arm jurisdiction. See, e.g., Walt Disney Co. v. Nelson, 677 So.2d 400, 403 (Fla. 5th DCA 1996); Qualley v. International Air Service Co., 595 So.2d 194, 196 (Fla. 3d DCA 1992), cause dismissed, 605 So.2d 1265 (Fla.1992). However, when a parent exercises sufficient control over a subsidiary, that control establishes an agency and supports jurisdiction. E.g., State v. American Tobacco, Co., 707 So.2d 851, 854-55 (Fla. 4th DCA 1998); see also Bell Atlantic Corp. v. Associated Data Consultants, Inc., 714 So.2d 523 (Fla. 4th DCA 1998). The amount of control exercised by the parent must be high and very significant. American Tobacco, 707 So.2d at 851 (Fla. 4th DCA 1998). "[T]he parent corporation, to be liable for its subsidiary's acts under the ... agency theory, must exercise control to the extent the subsidiary `manifests no separate corporate interests of its own and functions solely to achieve the purposes of the dominant corporation.' " Id. (quoting Vantage View, Inc. v. Bali East Development Corp., 421 So.2d 728 (Fla. 4th DCA 1982) modified on other grounds by Dania Jai-Alai Palace v. Sykes, 450 So.2d at 1114 (Fla.1984)).
The instant case is analogous to Kramer Motors, Inc. v. British Leyland, Ltd., 628 F.2d 1175 (9th Cir.) cert. denied, 449 U.S. 1062, 101 S.Ct. 785, 66 L.Ed.2d 604 (1980). In Kramer Motors, the court found that there was insufficient control by the parent over the subsidiary despite: 1) some of the directors of the parent were members of the board of the subsidiary; 2) the president of the subsidiary served as a director of the parent; 3) the parent had a general executive responsibility for the subsidiary's operation and reviewed and approved the major policy decisions of the subsidiary; 4) the parent guaranteed obligations of the subsidiary to United States banks; 5) executives of the parent worked closely with executives of the subsidiary on pricing and products and sometimes traveled to the United States for meetings; 6) the parent approved the subsidiary's proposal to consolidate product distribution; and 7) the parent established goals and gave directives to the subsidiary. Id. at 1177. Despite the amount of involvement in Kramer Motors of the parent over the subsidiary, the court found that such contact was insufficient to establish an agency because no evidence was shown that the parent controlled the internal day-to-day affairs of the subsidiary. All goals and directives of the parent were "normal" and did not show "operational control" of the subsidiary by the parent necessary to establish personal jurisdiction. See also General Cigar Holdings, Inc. v. Altadis, S.A., 205 F. Supp 2d 1335 (S.D.Fla.), aff'd, *892 54 Fed. Appx. 492 (11th Cir.2002), (finding no personal jurisdiction over a parent with a Florida subsidiary where despite "regular and extensive contact" and a "very close working relationship" between the parent and the subsidiary, there was no evidence that the parent controlled the subsidiary's daily "basic operation").
In the instant case, the lack of control over Enic, PLC's subsidiary, Enic Entertainment, is evident in the record. First, the record shows that Enic, PLC was not directly involved in the day-to-day operation of Enic Entertainment and more specifically, Church Street Station. Although the subsidiary Enic Entertainment reported to its parent, the actual day-to-day operation of Church Street Station was controlled solely by Enic Entertainment, not by the parent. The evidence was insufficient to establish that Enic, PLC had the operational control necessary over Enic Entertainment to obtain personal jurisdiction over Enic. Second, the actual negotiations involving the sale of Church Street Station were controlled exclusively by Enic Entertainment, not by Enic, PLC. Although Enic, PLC expressed its approval of Enic Entertainment's contract with F.F. Station for the sale of a major asset, Church Street Station, Enic, PLC was simply not involved in the contract negotiations; the sales contract was negotiated exclusively between F.F. Station and Enic Entertainment. Additionally, Enic Entertainment never claimed to be acting on behalf of Enic, PLC, nor is Enic, PLC mentioned anywhere in the agreements relating to the sale of Church Street Station. Furthermore, the record reveals no act by Enic, PLC which could be interpreted as giving rise to the cause of action alleged by the Plaintiffs. Although Enic, PLC approved Enic Entertainment's contract with F.F. Station for the sale of Church Street Station (which gave rise to the breach of contract action after closing), Enic, PLC's approval of the contract negotiated by its subsidiary, Enic Entertainment, "does not constitute the kind of deliberate forum protection-invoking act which the law requires." See, e.g., Kramer Motors, 628 F.2d at 1178 (citing World-Wide Volkswagen v. Charles S. Woodson, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)). Finally, Enic Entertainment's presence in the State of Florida was primarily for the purpose of carrying on its own business, not that of its parent, Enic, PLC. Enic Entertainment had some semblance of independence from Enic, PLC and thus, jurisdiction over Enic, PLC cannot be acquired on the basis of Enic Entertainment's local activities. See, e.g., Consolidated Development Corp. v. Sherritt, Inc., 216 F.3d 1286, 1293 (11th Cir. 2000); cf. Meier v. Sun Int'l Hotels, Ltd., 288 F.3d 1264 (11th Cir.2002) (finding of control warranted where Florida subsidiaries were mere instrumentalities of parent); John Scott, Inc. v. Munford, Inc., 670 F.Supp. 344 (S.D.Fla.1987) (finding of control warranted by parent's direct and active participation in and management of transaction at issue).
We conclude that the Plaintiffs failed to establish a basis for personal jurisdiction over Enic, PLC when it could not establish that it exercised sufficient and significant control over Enic Entertainment to subject itself to the personal jurisdiction of Florida courts. The order denying Enic, PLC's motion to dismiss for lack of personal jurisdiction is reversed and we remand for further proceedings.
REVERSED and REMANDED.
SHARP, W. and TORPY, JJ., concur.
NOTES
[1] Section 48.193, Florida Statutes (2002), provides in pertinent part: (1) Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following acts:

(a) Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state.
(b) Committing a tortious act within this state.
* * *
(g) Breaching a contract in this state by failing to perform acts required by the contract to be performed in this state.