WELLS, Judge.
Reynolds American, Inc. (“RAI”) and Reynolds Global Products, Inc. (“RGP”) appeal from orders denying their respective motions to dismiss for lack of personal jurisdiction. See Fla. R. App. P. 9.130(a)(3)(C)(i). Because we agree that there are insufficient jurisdictional facts to bring this action within the purview of Florida’s long-arm statute, we reverse. See § 48.193, Fla. Stat. (2010); Venetian Salami Co. v. Parthenais, 554 So.2d 499 (Fla.1989).
According to Gabriel Gero, he invented a new and novel packaging idea, called the Swingpak, in the early 1960’s. In 1971, he presented this idea to RJR Reynolds Tobacco Company (“RJR”) (a North Carolina corporation), which expressed interest in it.[1] Gero and RJR thereafter had continuing discussions about the Swingpak for at least the next twenty years, including after Gero moved to Florida in 1992. In those discussions, RJR continually expressed interest in the packaging concept and encouraged Gero to refine and make improvements to it. Ultimately, RJR rejected the Swingpak concept, claiming that it could not be economically produced.
Sometime in 2003, Gero learned that RJR “or one of RJR’s affiliated companies” — which would allegedly include RAI (RJR’s parent corporation) and RGP (another RAI subsidiary) — was using his idea in packaging its cigarettes. In 2006, Gero filed the instant action for relief against RJR, RAI and RGP in the lower court[2] stemming from the alleged misappropriation of his novel cigarette packaging idea.[3] RJR filed an answer conceding jurisdiction. RAI and RGP separately moved to dismiss the amended complaint for lack of personal jurisdiction on the ground that the facts alleged were insufficient to satisfy the Florida’s long-arm statute.[4] The trial court denied both motions. We review both of these orders de novo and reverse. See Camp Illahee Investors, Inc. *119 v. Blackman, 870 So.2d 80, 83 (Fla. 2d DCA 2003) (“Our standard of review on the issue of personal jurisdiction over a foreign corporation is de novo.”).
In Venetian Salami Co., the Florida Supreme Court set forth the procedure for determining whether personal jurisdiction over a foreign corporation is appropriate. This two-step inquiry requires a the trial court to first determine whether sufficient jurisdictional facts exist to bring the action within the ambit of Florida’s long-arm statute (section 48.193), and then to determine whether the foreign corporation possesses sufficient “minimum contacts” with Florida to satisfy federal constitutional due process requirements. Venetian Salami Co., 554 So.2d at 502.
In this case, Gero alleged specific jurisdiction [5] over RAI and RGP on an agency theory, claiming that RJR, acting as RAI and RGP’s agent, committed a tortious act in Florida, see § 48.193(l)(b), Fla. Stat. (2010), and breached a contract in Florida. See § 48.193(l)(g), Fla. Stat. (2010). RAI (RJR’s parent corporation), as the amended complaint avers, is a North Carolina corporation formed in 2004 — well after the misappropriation complained of here — with its principal place of business in that state. RGP (also an RAI subsidiary) is a Delaware corporation formed in 2003 — again well after the misappropriation complained of here — with its principal place of business in North Carolina.
According to Gero, who concededly “never dealt” with RAI or RGP while in Florida or elsewhere, RAI and RGP are subject to personal jurisdiction in Miami-Dade County because RJR, RAI, and RGP are all agents of one another. More particularly, Gero claims that these entities are all agents of one another because: RAI and RGP “could only have accessed [the Swingpak] from RJR”; “[after] Gero introduced RJR to the Swingpak under terms of confidentiality, RJR then introduced Gero’s novel idea to its then-Parent [RATs predecessor]”; and RGP then “accessed that concept ... through RAI (or its predecessor).” Thus, according to Gero, “RJR and its then-Parent [RAI’s predecessor] and its other subsidiaries became agents of each other, and the Parent and its other subsidiaries similarly became agents of each other, as the Reynolds network of companies, including [RGP], appropriated the Swingpak to their commercial use to sell product.” Even if taken as true, these claims are not sufficient to confer jurisdiction over RAI and RGP.
An agency relationship exists where the following are demonstrated: “1) acknowledgment by the principal that the agent will act for it; 2) the agent’s acceptance of the undertaking; and 3) control by the principal over the action of the agent.” Enic, PLC v. F.F. S. & Co., 870 So.2d 888, 891 (Fla. 5th DCA 2004); State v. Am. Tobacco Co., 707 So.2d 851, 854 (Fla. 4th DCA 1998). None of these elements is alleged or demonstrated to exist here. There is no claim or evidence that RAI or its predecessor acknowledged RJR, the purported initial misappropriator,' as an agent to act for it. Nor is there claim or evidence that RJR agreed to so act. Likewise, there is no claim or evidence that RJR was the acknowledged agent of RGP, or that RJR agreed to so act. And, there certainly is no claim or evidence that RAI, its predecessor or RGP *120 exercised the requisite control over RJR’s actions. Rather, Gero’s claim simply relies upon the parties’ parent/subsidiary relationship to fill this void, asserting only RJR’s act of “introducing” the Swingpak concept to RAI (or its predecessor), which then allegedly “shared” the Swingpak concept with another subsidiary, RGP. This is wholly inadequate to support the existence of an agency relationship for, indeed, in order to establish an agency relationship between a parent and its subsidiary, or even a between sister subsidiaries for that matter, a “high and very significant” level of control exerted by the parent over the subsidiary’s actions must be demonstrated. Enic, PLC, 870 So.2d at 891; see also Dev. Corp. of Palm Beach v. WBC Constr., L.L.C., 925 So.2d 1156, 1162 (Fla. 4th DCA 2006) (finding that the parent corporation must exert “operational control” over the subsidiary “to subject the parent to jurisdiction under the agency theory of section 48.198(1)”); Am. Tobacco Co., 707 So.2d at 855 (holding that, “[a]s to the control element of the agency relationship, the amount of control the parent exercises must be very significant”). No such control is claimed here.
It is, of course, well settled that “[a] parent corporation and its wholly-owned subsidiary are separate and distinct legal entities.” See Am. Int’l Group, Inc. v. Cornerstone Businesses, Inc., 872 So.2d 333, 336 (Fla. 2d DCA 2004); Gladding Corp. v. Register, 293 So.2d 729, 732 (Fla. 3d DCA 1974) (stating that “that the fact that one corporation, the parent, owns all of the stock of a subsidiary company does not erase the latter’s identity as a legal entity, nor create any conclusions that the latter is only the alter ego of the former”). Moreover, the fact that one corporation “owns” or is the parent of another does not, by itself, make the parent liable for the torts or breaches of the subsidiary. See Am. Int’l Group, Inc., 872 So.2d at 336 (finding that “a parent corporation is not liable for torts committed by its subsidiary”); Unijax, Inc. v. Factory Ins. Ass’n, 328 So.2d 448, 453-54 (Fla. 1st DCA 1976) (recognizing that “courts have uniformly held that a parent company is not liable for the torts of its subsidiaries, unless the subsidiary is operated as a ‘mere instrumentality’ of the pai'ent”). It is therefore no surprise that it is also “well settled in Florida that the mere presence of a subsidiary in Florida, without more, does not subject a non-Florida corporate parent to long-arm jurisdiction.” Enic, PLC, 870 So.2d at 891; Qualley v. Int’l Air Serv. Co., 595 So.2d 194, 196 (Fla. 3d DCA 1992) (“Florida decisions under the closely related provisions of subsection 48.181(1), Florida Statutes (1989), as well as section 48.193, have held that the presence of a subsidiary corporation within Florida is not enough, without more, to subject a non-Florida parent corporation to long-arm jurisdiction within this state.”); see also Am. Exp. Ins. Servs. Europe Ltd. v. Duvall, 972 So.2d 1035, 1039 (Fla. 3d DCA 2008) (noting that “[t]he corollary is also true-jurisdietion over a parent company does not, without more, confer jurisdiction over the subsidiary”). This same reasoning applies to sister subsidiaries, such as RJR and RGP.
In short, we agree with RAI and RGP that insufficient jurisdictional facts exist to confer personal jurisdiction over them under Florida’s long-arm statute. While this conclusion makes it unnecessary to address the constitutional prong of Venetian Salami Co., we nonetheless note that even if the undisputed facts fell within the ambit of section 48.193, RAI and RGP’s conduct would still not be such that they should reasonably anticipate being haled into court in Florida. See Venetian Salami Co., 554 So.2d at 500; Homeway Furniture Co. of Mount Airy, Inc. v. Horne, 822 *121 So.2d 533, 536 (Fla. 2d DCA 2002) (“If Florida’s long-arm statute does not provide a basis for personal jurisdiction under the initial statutory prong of the [Venetian Salami Co.] inquiry, the constitutional analysis is unnecessary.”) Accordingly, the orders denying RAI and RGP’s motions to dismiss for lack of personal jurisdiction are reversed.
REVERSED and REMANDED.

. According to Gero, these discussions were conducted with the express understanding and agreement that his idea was not to be shared with anyone, but was to remain confidential. Apparently, no written agreement embodying this understanding was entered into since none is referenced in the amended complaint, nor attached to it.

. The amended complaint also brings claims against four British-American Tobacco defendants. This group of defendants is comprised of Imperial Tobacco Canada Ltd., British American Tobacco, PLC, British American Tobacco (Brands) Inc., and British American Tobacco (Investments) Ltd.

. The amended complaint asserts claims sounding in misappropriation of a novel idea (Count I), breach of implied contract (Counts II and III), equitable accounting (Count IV), and injunctive relief (Count V). All of these claims stem from the same alleged misappropriation of Gero's novel cigarette packaging idea.

. The British-American defendants also moved to dismiss for lack of personal jurisdiction; that motion remains pending in the lower court. Thus, this appeal deals solely with the orders denying RAI and RGP’s motions to dismiss for lack of personal jurisdiction.

. Long-arm jurisdiction over a foreign corporation under section 48.193 may be either general, see § 48.193(2)(where the defendant is "engaged in substantial and not isolated activity”), or specific. See § 48.193(l)(a)-(h) (where the defendant either "personally or through an agent does any of the acts enumerated in those subsections”) (emphasis added).