771 So.2d 1195 (2000)
Beth WETZEL, as Personal Representative of the Estate of Jay Wetzel, Deceased, Appellant,
v.
FISHERMAN'S WHARF OF POMPANO BEACH, INC., a Florida corporation, The City of Pompano Beach, China National Native Produce & Animal By-Products Import and Export Corporation, a foreign entity, Kwongyuen Hangkee Company Limited, a foreign entity, China National Fireworks Company, Ltd., a foreign entity, and C.T. International Enterprise Corporation, a foreign entity, Appellees.
No. 4D00-88.
District Court of Appeal of Florida, Fourth District.
October 18, 2000.
Rehearing Denied December 13, 2000.
*1196 Michael R. LeMaire, and Robert L. Sader of Sader & LeMaire, P.A., Fort Lauderdale, for appellant.
Robert Weill, John R. Hargrove, and W. Kent Brown of Heinrich Gordon Hargrove Weihe & James, P.A., Fort Lauderdale, for Appellees-Kwongyuen Hangkee Company Limited, a foreign entity, and China National Fireworks Company, Ltd., a foreign entity.
GROSS, J.
Appellant Beth Wetzel appeals the dismissal of her case against two defendants for lack of personal jurisdiction. We affirm the dismissal as to defendant China National Fireworks Co., Ltd., ("China National") but reverse as to Kwongyuen Hangkee Company Limited ("Kwongyuen").
Wetzel filed suit alleging the wrongful death of her husband, Jay Wetzel. On July 4, 1994, Mr. Wetzel was working as a "shooter" for a company putting on a fireworks display at the Pompano Beach Pier, in Broward County, Florida. According to the third amended complaint, one of the fireworks prematurely detonated, causing the injuries that led to Mr. Wetzel's death.
The complaint alleged that appellees China National and Kwongyuen "processed, distributed and put into the stream of commerce" the fireworks used in the display. A different company not a party to this appeal manufactured the fireworks.
China National and Kwongyuen filed a motion to dismiss for lack of personal jurisdiction. See Fla.R.Civ.P. 1.140(b)(2). To support the motion, appellees filed the affidavit of Sam Lau, the managing director of both companies. Lau's affidavit drew a distinction between "class B" display fireworks and "class C" fireworks:
Class B fireworks are for public display and can be obtained and used only by an appropriately licensed purchaser. Class C fireworks contain much less powder and are available for individual purchase and use by the public in general, subject to whatever local-level regulation may exist.
Lau's affidavit asserted that both companies were not incorporated in Florida; that they had never been licensed or authorized to do business in Florida; that they had never had "any office, employee or agent located in" Florida; that they had never owned assets in Florida; and that they had never advertised in Florida.
The affidavit stated that China National "has never sold any product directly to a Florida-based customer" and had never "sold or distributed any products" to Jay Wetzel's employer, a foreign corporation.
*1197 Lau's affidavit indicated that Kwongyuen had "never sold any display class fireworks directly to a Florida-based customer." The affidavit described one sale of fireworks to Jay Wetzel's employer:
Kwongyuen made one sale of fireworks to Pyrotechnico [Jay Wetzel's employer]. The sale is indicated on the attached invoice, dated 02/05/94 (meaning May 2, 1994), which indicates that the fireworks were shipped to Pyrotechnico in New Castle, Pennsylvania, from Hong Kong, via Los Angeles and Pittsburgh. These fireworks were never in the state of Florida prior to delivery to Pyrotechnico. Kwongyuen sold the fireworks to Pyrotechnico without any expectation that the fireworks could end up in Florida. Kwongyuen was not aware that Pyrotechnico conducted any operations in the state of Florida. Kwongyuen certainly did not foresee or have any reason to anticipate that it would be the subject of a lawsuit in the state of Florida relating to the fireworks it sold to Pyrotechnico in Pennsylvania.
Through discovery, Wetzel learned that Kwongyuen had sold fireworks to companies throughout the United States for over fifty years. Prior to Wetzel's accident, Kwongyuen employees regularly came to the United States to meet with customers and attend trade conventions. In the twenty-six month period before the July, 1994 accident, Kwongyuen sold 3,794 cases of class C individual use fireworks to a company in Broward County, which generated $68,305.41 in revenues. Kwongyuen issued the invoice for the last shipment of fireworks to Neptune Wholesale Company on March 24, 1994.
Lau's affidavit contended that Kwongyuen did not manufacture any fireworks; the company purchased fireworks from manufacturers and resold them in an "as is" condition. The deposition of a Kwongyuen employee revealed that the sales, ordering, and shipping process were conducted almost entirely in China. The company generally received orders via fax after sending a quote to customers in the United States. Once the customer placed the order, Kwongyuen ordered the fireworks from a manufacturer in mainland China. After receiving the goods, Kwongyuen typically placed them in a container for shipment to the customer, FOB[1] Hong Kong.
In Venetian Salami Co. v. Parthenais, 554 So.2d 499, 502 (Fla.1989), the supreme court set forth a two-step process for determining whether personal jurisdiction exists:
In determining whether long-arm jurisdiction is appropriate in a given case, two inquiries must be made. First, it must be determined that the complaint alleges sufficient jurisdictional facts to bring the action within the ambit of the statute; and if it does, the next inquiry is whether sufficient "minimum contacts" are demonstrated to satisfy due process requirements.
(Quoting Unger v. Publisher Entry Serv., Inc., 513 So.2d 674, 675 (Fla. 5th DCA 1987)); accord Execu-Tech Business Sys., Inc. v. New Oji Paper Co., 752 So.2d 582, 584 (Fla.2000).
The statutory prong of the Venetian Salami standard is governed by Florida's long-arm statute. Wetzel contends that this case falls under section 48.193(1)(f)2., Florida Statutes (1999), which provides for personal jurisdiction over a defendant:

*1198 (f) Causing injury to persons or property within this state arising out of an act or omission by the defendant outside this state, if, at or about the time of the injury, either:
1. The defendant was engaged in solicitation or service activities within this state; or
2. Products, materials, or things processed, serviced, or manufactured by the defendant anywhere were used or consumed within this state in the ordinary course of commerce, trade, or use.
(Italics supplied).
In applying section 48.193(1)(f)2., it does not matter that Wetzel's death was caused by a class B display firework and that Kwongyuen shipped only class C fireworks into Florida. A defendant's connection to Florida making it amenable to suit under the long-arm statute is established by the defendant's "business activities in Florida" and not by focusing solely on how the product causing injury entered the state. See Davis v. Pyrofax Gas Corp., 492 So.2d 1044, 1046 (Fla.1986).
Jurisdiction under section 48.193(1)(f)2. turns on whether Kwongyuen "processed" fireworks that were used or consumed within Florida "at or about" the time of Wetzel's injuries.
The verb "process" as used in the longarm statute has been defined as "to put through the steps of a prescribed procedure." Thomas Jefferson Univ. v. Romer, 710 So.2d 67, 72 n. 6 (Fla. 4th DCA 1998) (Farmer J., concurring in part, dissenting in part) (quoting THE AMERICAN HERITAGE DICTIONARY 1043 (1978)). BLACK'S LAW DICTIONARY 1084 (5th ed.1979), defines the noun "process" as
[a] series of actions, motions, or occurrences; progressive act or transaction; continuous operation; method, mode or operation, whereby a result or effect is produced....
Kwongyuen acted as a wholesaler in assembling 3,794 cases of fireworks from manufacturers for shipment to the Broward County purchaser. The conduct of a wholesaler in bringing together large quantities of goods for shipment amounts to "processing" of the goods within the meaning of section 48.193(1)(f)2.
The conclusion that the long-arm statute was intended to reach wholesalers is supported by Davis, where the supreme court observed that a
manufacturer or wholesaler that avails itself of the privilege of conducting solicitation activities and promoting or distributing its product line within the State of Florida should be amenable to a suit in Florida by one whose injury is occasioned by the use in Florida of the corporation's product purchased out of the state.
492 So.2d at 1046 (italics supplied).
Finally, Kwongyuen shipped the last order of class C fireworks by a ship that sailed from Hong Kong on March 29, 1994, with its destination as Fort Lauderdale. Even if they were on a slow boat from China, the class C fireworks presumably arrived at the Florida wholesaler's in time for distribution and use over the same July 4 weekend when Wetzel was injured. These fireworks were thus "used or consumed within this state in the ordinary course of commerce, trade, or use," "at or about the time of [Wetzel's] injury." § 48.193(1)(f)2, Fla. Stat. (1999).
This case is distinguishable from Plantation-Pioneer Industries, Corp. v. Koehler, 689 So.2d 1293 (Fla. 4th DCA 1997). The defendant in that case was a Michigan corporation involved in selling the defective product, but not in manufacturing or distributing it. See id. at 1293. A Hong Kong corporation distributed the product by shipping it directly from Hong Kong to the retailer, without ever passing through Michigan. See id. The Michigan corporation did not handle the sales paperwork, except to receive copies of orders and shipping reports. See id. at 1293-94. This court held that the Michigan corporation *1199 did not "process" the product within the meaning of section 48.193(1)(f). See id. at 1295. Unlike the Michigan corporation in Plantation-Pioneer, Kwongyuen put fireworks orders together in Hong Kong and shipped them to the Florida buyer, so it had some hands-on contact with the goods before their arrival in Florida.
On the second prong of the Venetian Salami analysis, we find that Kwongyuen's shipment into Florida of 3,794 cases of class C fireworks, which are products closely related to the type of firework causing the injury, established sufficient minimum contacts with Florida so as to render Kwongyuen amenable to suit in this state. See McHugh v. Kenyon, 547 So.2d 318, 319 (Fla. 4th DCA 1989); Shoei Safety Helmet Corp. v. Conlee, 409 So.2d 39, 41 (Fla. 4th DCA 1981); Kravitz v. Gebrueder Pletscher Druckgusswaremfabrik, 442 So.2d 985, 987 (Fla. 3d DCA 1983); Murante v. Pedro Land, Inc., 761 F.Supp. 786, 789 (S.D.Fla.1991).
As to China National, we agree with the statement in appellees' brief that Wetzel "did not offer a shred of evidence even relating to CHINA NATIONAL FIREWORKS much less showing that it had sufficient contacts with Florida to pass constitutional scrutiny."
We therefore affirm the trial court's dismissal of the case against China National, but reverse the dismissal against Kwongyuen.
Affirmed in part, reversed in part, and remanded.
KLEIN, J., and FINE, EDWARD H., Associate Judge, concur.
NOTES
[1] The Uniform Commercial Code-Sales, section 672.319(1)(a), Florida Statutes (1999), provides:

(1) Unless otherwise agreed the term "F.O.B." (which means "free on board") at a named place, even though used only in connection with the stated price, is a delivery term under which:
(a) When the term is "F.O.B. the place of shipment," the seller must at that place ship the goods in the manner provided in this chapter (s.672.504) and bear the expense and risk of putting them into the possession of the carrier[.]